**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

PAUL STEELMAN LIMITED, a Nevada Professional Corporation,

    Plaintiff,

v.

HKS, INC., a Texas Corporation,

    Defendant.

2:05-cv-01330-BES-RJJ

**ORDER**

Presently before this court is Defendant's Partial Motion to Dismiss (#27) filed on June 5, 2006. Plaintiff filed its Opposition (#29) and Defendant filed a Reply (#31).

**I. BACKGROUND**

This action arises out of a dispute between Paul Steelman Limited ("Steelman"), a Nevada Professional Corporation, and Defendant HKS, Inc. ("HKS"), a Texas corporation, regarding payment allegedly owed to Steelman for services it performed as the architect on an expansion project of the Foxwoods Resort Casino ("the Project") located in Mashantucket, Connecticut. The Foxwoods Resort Casino is owned by the Manshantucket Pequot Tribal Nation (the "Owner"). Steelman entered into an Agreement Between Owner and Architect on May 24, 2005 ("Architectural Contract") (Complaint (#1), ¶ 6 and Ex. 1). Pursuant to the Architectural Contract, Steelman was permitted to retain certain consultants, including HKS, to assist it in performing services under the Contract. (Complaint (#1), ¶ 7). Accordingly, Steelman and HKS entered into an agreement on June 23, 2005 (the "Consulting Agreement"), whereby HKS agreed to provide project management, construction

///

documentation and construction administration services on behalf of Steelman for the Project. (Complaint (#1), ¶ 8 and Ex. 2).

On October 21, 2005, Steelman was notified by the Owner that the Architectural Contract would be terminated "for the convenience of the Owner" effective October 28, 2005. (Complaint (#1), ¶ 11). Thereafter, Steelman allegedly notified its consultants, including HKS, of the termination and requested that they not deal directly with the Owner, pursuant to the terms of the Consulting Agreement. Steelman claims that, despite this request and in breach of the Consulting Agreement, HKS communicated directly with the Owner and was subsequently hired to replace Steelman as the architect on the Project.

On November 3, 2005, Plaintiff filed its Complaint, in which it has asserted state law claims of breach of contract, civil conspiracy, tortious interference, and indemnification. In its motion, Defendant seeks dismissal of Plaintiff's civil conspiracy, tortious interference, and indemnification claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. ANALYSIS

In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court must accept as true all material allegations in the complaint, as well as all reasonable inferences that may be drawn from such allegations. LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 (9th Cir. 2000). The allegations of the complaint also must be construed in the light most favorable to the nonmoving party. Schwarz v. United States, 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is appropriate "only if it clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988). Although a court's review on a 12(b)(6) motion to dismiss is generally "limited to the contents of the complaint," the court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the motion into a motion for summary judgment. See Durning v. First Boston Corp, 815 F.2d 1265, 1267 (9th Cir. 1987). Accordingly, this Court has properly considered the exhibits attached to the Complaint in ruling on this motion.

Where federal jurisdiction is invoked upon diversity of citizenship, a federal court is bound to apply the substantive law of the state in which it sits. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262 (9th Cir.1978). Here, because the court's jurisdiction is based upon diversity, the Court will look to Nevada law to dispose of the Motion.

**A.     Tortious Interference (Third Claim for Relief)**

Plaintiff alleges that HKS "intentionally interfered with performance of the Architectural Contract by communicating and dealing directly with the Owner without authorization from Steelman, allowing the project to go forward utilizing the Steelman design without final payment to Steelman." (Complaint (#1), ¶ 35). To state a claim of tortious interference with contractual relations in Nevada, a plaintiff must establish the following elements:

(1) a valid and existing contract;

(2) the defendant's knowledge of the contract;

(3) intentional acts intended or designed to disrupt the contractual relationship;

(4) actual disruption of the contract; and

(5) resulting damage.

J.J. Industries, LLC v. Bennett, 71 P.3d 1264 (Nev. 2003) (citing Sutherland v. Gross, 772 P.2d 1287, 1290 (Nev. 1989)).

According to the Complaint, the Architectural Contract HKS allegedly interfered with was terminated effective October 28, 2005, and thereafter HKS allegedly "communicated directly with the Owner regarding assuming Steelman's role as Architect on the Project." (Complaint (#1), ¶ 11, 22). Accordingly, HKS contends that Steelman's tortious interference claim "is obviously missing one essential element - the valid and existing contract," because the Architectural Contract had terminated before Defendant made any contact with the Owner that could be construed as a disruption of the contract. (Motion (#27), p. 5). Steelman responds that Defendant tortiously interfered with the "payment obligation" of the Architectural

///

3

Contract, and this payment obligation survived termination of the agreement. (Opp. (#29), p.3).

Plaintiff's novel argument is not supported by reason or law. A tortious interference claim presupposes the existence of a valid, enforceable contract at the time the alleged disruption of the contract occurs. Where, as here, the contract has terminated or been breached before the alleged interference occurred, the plaintiff no longer possesses any contractual rights to be violated and the defendant could not have had knowledge of an existing contract with which it interfered. See, e.g., J.J. Industries, LLC v. Bennett, 71 P.3d at 1267 ("plaintiff must demonstrate that the defendant knew of the existing contract, or at the very least, establish 'facts from which the existence of the contract can reasonably be inferred.'"). Plaintiff's theory of tortious interference must fail under the set of facts presented in its Complaint. Accordingly, Defendant is entitled to dismissal of this claim.

**B.      Civil Conspiracy - Second Claim for Relief**

An actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Hilton Hotels v. Butch Lewis Productions, 862 P.2d 1207, 1210 (Nev. 1993) (citing Sutherland v. Gross, 772 P.2d 1287, 1290 (Nev. 1989)). Plaintiff alleges that "HKS agreed . . . with the Owner of the Project to replace Steelman as the Architect without the release of HKS by Steelman from the Consulting Agreement" and that "HKS committed unlawful overt acts in furtherance of that conspiracy." (Complaint (#1), ¶¶ 29, 30).

Civil conspiracy is not an independent cause of action - it must arise from some underlying wrong. See Rusheen v. Cohen, 128 P.3d 713, 722 (Cal. 2006); see also C.J.S. CONSPIRACY § 8 (2006) ("the gravamen or gist of the action for civil conspiracy is not the conspiracy itself, but the underlying wrong or tort which, absent the conspiracy, would give rise to a right of action"). Plaintiff's civil conspiracy claim appears to be derivative of its tortious interference claim. Thus, having concluded that Plaintiff's claim of tortious interference is not

4

actionable as pleaded, Steelman's civil conspiracy claim must also fail.  See <u>Sahara Gaming Corp. v. Culinary Workers Union Local 226</u>, 984 P.2d 164, 165 (Nev. 1999).

**C.     Indemnification - Fourth Claim for Relief**

The Consulting Agreement entered into between Steelman and HKS contains the following indemnification clause:

> **§ Indemnification**  To the maximum extent allowed by law, [Defendant] will indemnify and hold harmless [Plaintiff] and its employees, from any and all liabilities, costs or expenses (including all attorney's fees) arising out of, or which are claimed to arise, or relate in any way to any negligent act or omission, willful misconduct, fault by [Defendant] or anyone for whom [Defendant] is responsible in performance of the Agreement, regardless of whether or not such liability, loss, damage or expense was caused in part by a party indemnified hereunder.

(Complaint (#1), Ex. 2 at p. 21).  Thus, Steelman argues that it is entitled to indemnification from HKS for certain unspecified "costs and expenses, including attorney's fees as a result of the willful misconduct and/or fault of HKS." (Complaint (#1), ¶ 40, 41).

In Nevada, the right to indemnity may be express - arising out of a written contract, or implied - arising out of a relationship between the parties.  <u>American Federal Sav. Bank v. County of Washoe</u>, 802 P.2d 1270, 1273 (Nev. 1990).  Whether express or implied, indemnity shifts an entire monetary loss from one party to another.  <u>American Federal Sav. Bank</u>, 802 P.2d at 1273 (citation omitted).  Although the basis of Plaintiff's indemnification claim is unclear at this time, the claim withstands a Rule 12(b)(6) motion.  To find otherwise would require the Court to conduct a detailed and speculative analysis of Plaintiff's claim, and such analysis is inappropriate at this stage.

The liberal rules of notice pleading set forth in the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts supporting his claim.  See <u>Yamaguchi v. U.S. Dept. of the Air Force</u>, 109 F.3d 1475, 1481 (9th Cir. 1997).  All the rules require is a "short and plain statement" upon which a claim rests.  <u>Id.</u>  Moreover, a claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief.  See <u>United States v. Howell</u>, 318 F.2d 162, 166 (9th Cir. 1963).  Plaintiff has adequately pleaded facts supporting its indemnification claim, at

///

least in theory, and deserves an opportunity to support its claim with additional evidence obtained through discovery. Accordingly, this claim will not be dismissed.

### III.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Partial Motion to Dismiss (#27) is DENIED IN PART and GRANTED IN PART. Defendant's Partial Motion to Dismiss is GRANTED as to Plaintiff's Second and Third Claims for Relief, the claims of civil conspiracy and tortious interference. Defendant's Partial Motion to Dismiss is DENIED as to Plaintiff's indemnification claim.

DATED: This 24th day of January, 2007.

_____

United States District Judge